van Gestel, J.
This memorandum responds to cross motions for summary judgment. The first served is the January 14, 2002 motion of defendants ASN Voice & Data Corporation and Stefan Dunigan (collectively “ASN”). The second served is the motion of the plaintiff, Corporate TeleData, Inc. (“CTD”). While attacking different pleadings — ASN challenging CTD’s complaint and CTD challenging ASN’s counterclaim and third-party complaint — the two motions have a common thread.
BACKGROUND
At relevant times, ASN and CTD were competitors. ASN in New York and CTD in Boston each were agents for vendors of telephone communication products and services, and each, as such, were sales agents for Verizon. ASN and CTD each entered an “Authorized Agent Network Services Marketing Agreement” with Bell Atlantic Network Services, Inc. (the “BANSI Agreement”), now existing under the Verizon corporate name.
Included in each of ASN’s and CTD’s BANSI Agreements is a Section VI entitled COMPENSATION AND PAYMENT. Subsection 12 of Section VI reads:
In the case of a dispute between two or more agents regarding compensation, BANSI shall resolve the dispute. BANSI’s decision on the matter will be final and binding.
The underlying claims in this case, at least as between CTD and ASN for purposes of the present motions, are that a disloyal employee of CTD who made sales of Verizon products, diverted those sales to ASN which in turn received commission payments from Verizon under ASN’s BANSI Agreement. There are numerous counts in the complaint, not all against the same defendants, that run a gamut from diversion of corporate opportunities through tortious interference with business relations, conversion and civil conspiracy, to the uniquitous G.L.c. 93A.
On July 5, 2001, over four months after the filing of this case, CTD requested Verizon “to investigate sales made by [CTD] but processed by ASN.” In the cover facsimile transmission CTD said: “It has been discovered that during 2000 and 2001, many Verizon sales made by Tom Sullivan, then a [CTD] sales employee, were processed by ASN, a New York Verizon agent.”
CTD sent to Verizon two lists which it said “may not be complete.” One list “consisted] of orders given to Tom Sullivan of [CTD] from Mark Kenney of EZE Castle ... but processed by ASN.” The “second list consisted] of orders given to Tom Sullivan of [CTD] from a myriad of clients but processed by ASN.” Along with the lists, CTD enclosed a package of supporting documentation.
In response to a January 28, 2002 request from CTD’s then counsel, Verizon’s Assistant General Counsel replied:
As you are aware, [Section VI, Paragraph 12] provides that in cases of disputes over compensation and payment between two agents, Verizon is empowered to investigate and resolve the matter. Based on a complaint from [CTD], Verizon is now in the process of reviewing certain transactions to determine if compensation has been appropriate.
By letter dated March 19, 2002, Verizon reported to CTD as follows:
With respect to the investigation you requested, Verizon received from you about two boxes of documents. The boxes contained 154 cases for CTD (AIS); there were duplicates of paperwork and email transactions.
We reviewed these documents closely. In addition, we compared those documents with our business records that may have related to the orders you claimed were at issue. In doing so, Verizon has expended a great deal of time and effort. To date, we have reached conclusion as to two categories of CTD cases that you brought to our attention.
*78 The first category represents cases for which AIS (CTD) has already received compensation from Verizon. These cases are set forth in Attachment A and total 52 in number.
The second category represents proposals which have not resulted in a firm order from any agent. These cases are set forth in Attachment B and total 69 in number.
We are continuing our investigation of the remaining 33 cases that you provided to us.
Then, by letter of March 25, 2002, Verizon reported to CTD that it had finished its work on the remaining 33 cases. In this latter group, Verizon found only one for which CTD was entitled to compensation. The rest were stated by Verizon to be either “duplicates or where the customers themselves issued the orders” or “cases that were submitted by CDT [sic] (AIS), and subsequently cancelled” and one on which CTD received payment on November 30, 2000.[1]

DISCUSSION AND ORDER

The dispute resolution language in the Verizon (BANSI) Agreement is binding on both ASN and CTD. It is, in essence, a form of arbitration, with Verizon serving as the arbitrator. Thus, CTD having submitted its entire claim regarding ASN to Verizon is bound by Verizon’s determination; and so is ASN. There is, therefore, nothing left to litigate before the Court on CTD’s claims against ASN. ASN’s motion for summary judgment is, therefore, ALLOWED.
On the other hand, Verizon’s determination has no relationship whatsoever to those aspects of ASN’s counterclaim relating to interference with advantageous relations and violations of G.L.c. 93A. Consequently, CTD’s cross motion for summary judgment on ASN’s counterclaim is DENIED.

There Is some confusion in the record. ASN, in footnote 3 of its most recently filed response; says that CTD’s first list to Verizon contained 154 names and the second list contained 58 names. The foregoing reports from Verizon account for 154 names, which this Court presumes constitute all of the first list. There is nothing in the record about whatposition Verizon took regarding the second list, although ASN suggests that Verizon “will not adjudicate these claims because they do not reflect situations where both agents had placed the same order.” ASN response at p. 3. If that is the case, presumably ASN was not involved in these alleged CTD orders.